```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| THE FIRST LIBERTY INSURANCE CORPORATION | : | CIVIL ACTION |
| v. | : | |
| MM, et al. | : | NO. 16-5397 |

MEMORANDUM

Bartle, J.                                                    April 28, 2017

Before the court are the cross-motions of plaintiff The First Liberty Insurance Corporation for judgment on the pleadings and of defendant MM, a pseudonym, for partial judgment on the pleadings on his declaratory judgment claim.

First Liberty brought this declaratory judgment action against MM and BB, seeking a declaration that it has no obligation to defend or indemnify MM in a lawsuit brought by BB against MM in the Superior Court of the District of Columbia arising out of a sexual encounter between BB and MM.[1] Jurisdiction is based on diversity of citizenship. First Liberty was incorporated in Illinois and has a principal place of business in Massachusetts. MM and BB are citizens of Pennsylvania. At the time of the events at issue in the underlying lawsuit, MM was an insured under his parents'

---

1. BB was served with the complaint but counsel for BB has not entered an appearance. BB has not filed an answer or joined in any of the pending motions.

homeowner's insurance policy issued by First Liberty.  MM has filed an answer with counterclaims seeking a declaratory judgment that First Liberty has a duty to defend and indemnify MM as well as for breach of contract, bad faith, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, et seq., in failing to provide that defense.

I.

"The standard for evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as the familiar standard used for evaluating a motion to dismiss under Rule 12(b)(6)."  Accurso v. Infra-Red Servs., Inc., 23 F. Supp. 3d 494, 499 (E.D. Pa. 2014).  Accordingly, "the distinction between a motion under 12(b)(6) and a motion under 12(c) 'is purely formal.'"  Id. (quoting Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)).  Therefore, insofar as the movants seek judgment on the pleadings, the standard used for a motion to dismiss under Rule 12(b)(6) guides our determination.  We must determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Under Rule 12(c), the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988) (quoting Soc'y Hill Civic Assoc. v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)). "In order to grant a motion for judgment on the pleadings, it must be apparent that there are no issues of material fact and that only questions of law exist." Corrigan v. Methodist Hosp., 158 F.R.D. 70, 71 (E.D. Pa. 1994). "[J]udgment will not be granted 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Jablonski, 863 F.2d at 290 (quoting Soc'y Hill Civic Assoc., 632 F.2d at 1054).

## II.

The following facts are alleged in the complaint. In July 2016, BB filed a lawsuit against MM in the Superior Court of the District of Columbia claiming that, in September 2015, MM "negligently, intentionally and illegally videotaped [BB] performing a sexual act on him without her knowledge or consent." BB was a freshman at American University at the time of the incident, which occurred at an off-campus party while BB was intoxicated. She has no recollection of the incident.

The following day, MM "negligently, intentionally and/or willfully shared this illegal video with his friends and classmates." BB became aware of the incident when others told her about the video. She alleges that "[a]s a direct and proximate result of [MM's] unconsented physical contact, illegal videotaping, and unauthorized sharing of that videotape with others," she suffered physical injuries, severe emotional distress, depression, humiliation, and embarrassment.

MM was thereafter arrested by the District of Columbia Metropolitan Police Department for this conduct. He pleaded guilty to one count of "Voyeurism – Recording."

BB brought two claims for relief in her civil action in the District of Columbia based on this conduct. The first is labeled "Negligence & Gross Negligence." There, BB claims that MM "owed [her] a duty to exercise reasonable care not to injure her." The second claim for relief is entitled "Assault & Battery." With regard to that claim, she asserts that MM "over the course of his attack on [BB], intentionally acted to create in [BB] the apprehension of an imminent harmful and offensive contact with her person." She seeks $750,000 in compensatory damages plus interest and costs as to each claim.

After the underlying complaint was filed in the District of Columbia, MM sought coverage and a defense from First Liberty in the underlying litigation. First Liberty

thereafter instituted this declaratory judgment action after informing MM and his parents that it had no duty to defend or indemnify MM with regard to that litigation under the First Liberty policy.

The First Liberty policy[2] provides in relevant part:

> **COVERAGE E – Personal Liability**
>
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> > 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. . . .
> >
> > 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . .

Under the policy, "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.'"

The policy also contains two relevant exclusions. First, it states:

> **Coverage E – Personal Liability** . . . do[es] not apply to "bodily injury" or "property damage":

---

2. It appears that the policy uses bold text to set apart certain terms and phrases. To the extent that we quote from the policy, all bold text in this opinion appears in the policy and has not been added by the court.

. . .

>   k. <u>Arising out of sexual molestation</u>, corporal punishment or physical or mental abuse.

(Emphasis added).  Second, an Amendatory Endorsement to the policy also excludes liability coverage:

> For "bodily injury" or "property damage" that results, or may reasonably be expected to result, <u>from the intentional or criminal acts or omissions of an "insured,"</u> even if it
>
>> (1) is of a different kind, quality, or degree than initially expected or intended; or
>>
>> (2) is sustained by a different person, entity, real or personal property, than initially expected or intended.
>
> However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protected persons or property.

(Emphasis added).

### III.

We now turn to the question whether First Liberty has a duty to defend MM under the relevant provisions of the First Liberty policy.  The parties do not dispute that, in this diversity action, the substantive law of Pennsylvania applies.  <u>See, e.g.</u>, <u>Nationwide Mut. Ins. Co. v. Buffetta</u>, 230 F.3d 634, 637 (3d Cir. 2000).

The interpretation of an insurance policy is a question of law for the court. See Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985); 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). The primary goal of the court is to "ascertain the parties' intentions as manifested by the policy's terms." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). When the language of the policy is clear, we give effect to its plain meaning. See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010). Yet, "when a provision in the policy is ambiguous, 'the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.'" Kvaerner Metals Div. of Kvaerner U.S., Inc., 908 A.2d at 897 (quoting 401 Fourth St., Inc., 879 A.2d at 171). Policy language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). Courts will not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." See id. "Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense," and the

court "may inform its understanding of these terms by considering their dictionary definitions." Id. at 108.

In determining whether the insurer has a duty to defend, we must "compare the coverage afforded under the policy with the factual allegations contained within the four corners of the [underlying] complaint." See NorFab Corp. v. Travelers Indem. Co., 555 F. Supp. 2d 505, 509 (E.D. Pa. 2008) (citing Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)). "Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage." Pac. Indem. Co., 766 F.2d at 760. Even if only one of the factual allegations in the complaint comes within the scope of the insurance policy, the insurer nevertheless has a duty to defend the insured. See Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 831 n.1 (3d Cir. 1995); Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co., 704 A.2d 665, 669 (Pa. Super. Ct. 1997). However, if all claims of the underlying complaint fall outside the scope of the policy, there is no duty to defend or indemnify the insured. In deciding whether the underlying litigation falls within the scope of the policy, "we must look to the facts alleged in the underlying complaint, not the cause of action pled." QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007).

IV.

We begin by outlining the scope of coverage available to MM under the First Liberty policy. The policy requires First Liberty to defend an insured in a lawsuit accusing the insured of causing an occurrence, that is accidental conduct that results in bodily injury. The policy expressly excludes coverage for bodily injuries "[a]rising out of sexual molestation" or the insured's "intentional or criminal acts or omissions." In other words, First Liberty has a duty to defend MM against lawsuits that involve accidental conduct by MM if such conduct is not excluded under the terms of the policy. Based on the exclusions, First Liberty does not have a duty to defend MM against a lawsuit alleging intentional or criminal acts or omissions or sexual molestation on the part of MM.

We must determine whether any of the allegations in the underlying lawsuit brought by BB in the Superior Court of the District of Columbia fall within the scope of the First Liberty policy. If so, First Liberty has a duty to defend MM. If not, there is no such duty. As explained above, in conducting this analysis we are bound by the four corners of the underlying complaint. See NorFab Corp., 555 F. Supp. 2d at 509 (citing Haver, 725 A.2d at 745). "Bedrock principles of Pennsylvania law require us to rely on the facts alleged in the underlying Complaint, and not on hypothetical scenarios that

reach well beyond the Complaint's 'four corners.'" State Auto. Mut. Ins. Co. v. Lucchesi, 563 F. App'x 186, 191 (3d Cir. 2014) (quoting Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010)).

The First Liberty policy specifically excludes bodily injury "[a]rising out of sexual molestation." First Liberty argues that this exclusion encompasses all of the conduct alleged in the underlying complaint, which arises out of the alleged sexual assault by MM of BB. MM responds that the underlying complaint alleges negligent acts or omissions that do not involve sexual molestation.

The law is settled that the mere allegation of negligence through "artful pleading" is not sufficient to trigger an insurer's duty to defend. See Haver, 725 A.2d at 745; State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 116 (3d Cir. 2009). As our Court of Appeals has explained, we must instead look to the factual allegations in the complaint. See Estate of Mehlman, 589 F.3d at 116. "[I]n focusing attention upon the cause of action pled, [claimants] run afoul of our caselaw, which dictates that the factual averments contained in a complaint determine whether an insurer must defend." Id. (quoting Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. Ct. 1997)).

Thus, here, we focus on whether BB's factual allegations in the underlying complaint "[a]ris[e] out of sexual molestation" and thus come within the sexual molestation exclusion of the First Liberty policy.  The term "molestation" is not defined in the First Liberty policy, therefore we will interpret it according to its ordinary meaning.  "The dictionary definition of molest is 'to disturb, interfere with, or annoy; or to subject to <u>unwanted or improper sexual activity</u>.'" <u>Westfield Ins. Co. v. Holland</u>, 2008 WL 5378267, at *6 (E.D. Pa. Dec. 19, 2008) (emphasis added) (quoting The American Heritage Dictionary of the English Language 1164 (3d ed. 1992)).  Intent to harm the victim is not necessary.  Molestation includes any "unwanted or improper sexual activity" regardless of whether the perpetrator believed that the victim consented to the conduct. <u>See</u> <u>id.</u>

Even taking the allegations in the underlying complaint in the light most favorable to MM, the alleged conduct undoubtedly falls within the sexual molestation exclusion.  In the underlying complaint, BB has accused MM of unwanted or improper sexual contact that caused her to suffer serious physical and emotional injuries.  She describes MM's sexual contact as an "assault," "attack," and "unconsented physical contact."  Throughout the complaint, BB describes the assault as "unconsented" and "unwarranted."  She alleges that, as a result

-11-

of her intoxication, the sexual assault took place while "she was noticeably disoriented and not making any sense" leaving her with "no recollection of the assault, the videotaping, or anything else that occurred that evening." The following day when she learned about the sexual assault "she was absolutely shocked and devastated."

MM contends that BB has not asserted in the underlying complaint that the sexual assault was non-consensual because the complaint states that BB was too intoxicated to remember the incident. He claims that "[s]urely a jury could conclude that MM believed the sexual act being performed upon him by BB and the videotaping of the same was consensual, but that such beliefs were not reasonable (i.e. negligence) due to BB's state of intoxication."

We disagree. The underlying complaint unequivocally asserts that the sexual assault occurred while BB was noticeably intoxicated, disoriented, and incoherent. The complaint repeatedly describes the incident as an unconsented and unwarranted sexual assault and attack. The "hypothetical scenario" presented by MM, wherein despite her visible intoxication and incoherence he might have believed that BB consented, "reach[es] well beyond the Complaint's 'four corners.'" See Lucchesi, 563 F. App'x at 191) (quoting Jerry's Sport Ctr., Inc., 2 A.3d at 541. Although consent is certainly

-12-

a defense that MM is free to raise at trial in the underlying litigation, it is not alleged in the complaint and is inconsistent with the allegations asserted therein. Therefore, it is not relevant to our consideration of whether First Liberty has a duty to defend MM based on a comparison of "the coverage afforded under the policy with the factual allegations contained within the four corners of the [underlying] complaint." See NorFab Corp., 555 F. Supp. 2d at 509 (citing Haver, 725 A.2d at 745). Because BB unmistakably alleges that the sexual contact was unwanted or improper sexual activity, her allegations fit squarely within the policy exclusion for conduct "[a]rising out of sexual molestation."

MM also asserts that because BB performed the sexual act on him rather than vice versa, no sexual molestation of BB by MM could have occurred. He states "[t]here is no allegation that MM ever touched BB and therefore there are no factual allegations to support a claim (Count II) that MM assaulted BB." MM goes so far as to accuse BB of being "the perpetrator of the purported sexual act" and claims that "BB's own actions" cannot "be an assault and/or attack on herself." This argument is without merit, and MM cites to no case law in support of it. A person is a victim of sexual assault if he or she is forced to perform a sexual act on the perpetrator. Sexual contact constitutes molestation, that is "unwanted or improper sexual

-13-

activity," regardless of whether the victim was forced to perform the sexual act on the perpetrator or the perpetrator performed the sexual act on the victim. See Holland, 2008 WL 5378267, at *6. Besides, a touching, by definition, requires each party to the touching to make contact with the other. The complaint clearly alleges that MM engaged in unwanted sexual activity with BB. Again, MM is free to attempt to prove otherwise at the trial.

In addition to the sexual assault claims, the underlying complaint alleges that MM "illegally videotap[ed]" BB during the sexual assault and shared that videotape with others without her consent. Of course, the recording of unwanted sexual activity and subsequent sharing of that recording of the unwanted sexual activity arise out of the unwanted sexual activity. As such, all of the conduct alleged in the underlying complaint arises out of sexual molestation and therefore is excluded by the policy.

Furthermore, MM has pleaded guilty to the charge of "Voyeurism - Recording" in the District of Columbia. In doing so, MM admitted that he "electronically record[ed], without the express and informed consent of the individual being recorded, an individual who is: . . . (C) Engaging in sexual activity." See D.C. Code § 22-3531(c)(1). The First Liberty policy excludes liability coverage for "'bodily injury' . . . that

results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an 'insured.'" MM's recording of the sexual activity with BB, for which he pleaded guilty, is the type of criminal act excluded by the policy.

V.

For the reasons explained above, First Liberty has no duty to defend MM in the lawsuit filed by BB against MM in the Superior Court of the District of Columbia. "Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." <u>Sikirica v. Nationwide Ins. Co.</u>, 416 F.3d 214, 225 (3d Cir. 2015). Accordingly, we will grant the motion of plaintiff The First Liberty Insurance Corporation for judgment on the pleadings and issue a declaration that it has no duty to defend or indemnify MM in the litigation brought against MM by BB in the District of Columbia. We will also deny the motion of defendant MM for partial judgment on the pleadings with regard to his declaratory judgment counterclaim. As a result of our decision that First Liberty has no duty to defend or indemnify MM, MM's counterclaims for breach of contract, bad faith, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, et seq., must fail as a matter of law, and they will be dismissed.